[L. A. No. 14533.   In Bank.—January 29, 1937.]

In the Matter of the Estate of MARIA ARMSTRONG, Deceased.  GEORGE ROBSON, Appellant, v. R. F. GROSS et al., Respondents.

Torchia & Sefman, David L. Sefman and Ernest M. Torchia for Appellant.

Clyde R. Burr, Philip Grey Smith, Woodruff, Burr, & Smith, Minton & Minton and Albert N. Minton for Respondents.

CURTIS, J.—Appeal from an order granting a new trial after a will contest in which the probate of the will was revoked. Revocation of the will of Maria Armstrong was sought upon the ground that the will had not been executed with the formalities required by section 1276 of the Civil Code as it stood at the time of the execution of the will. (Now section 50, Probate Code.) George Potter, a former employee of the Mortgage Guarantee Company, in the city of Los Angeles, testified upon the trial that the document had been brought to him by a fellow-employee who requested him to sign it at the place designated, and that he signed it at his own desk, and at the time he signed it, he was not in the presence of Maria Armstrong, and did not sign it at her request. This testimony was contradicted by the other witness to the will. The action was tried by the court with a jury, and these two interrogatories were presented to the jury: "(1) Did George Potter sign the will in the presence of Maria Armstrong, the decedent, and in the presence of the other witness? (2) Did George Potter sign the will in the presence of Maria Armstrong, the decedent, and at her request?" The jury returned a general verdict which reads as follows: "We, the jury in the above-entitled action, find for the contestant, George Robson, and that the document is not the will of Maria Armstrong, deceased. This 20th day of July, 1933. W. M. F. Village, Foreman." Judgment revoking the probate of the will was thereupon entered.

Thereafter, the trial judge, upon motion properly made, granted the motion of defendants for a new trial. This appeal is prosecuted from that order.

Is an order granting a new trial in a will contest after probate an appealable order? There can be no question that prior to the enactment of the Probate Code as a separate compilation in 1931 that such an order was an appealable order. Ever since the decision in the case of *In re Bauquier's Estate*, 88 Cal. 302 [26 Pac. (2d) 178], decided in 1891, it has been uniformly held that an order granting a new trial following a judgment upon a will contest is appealable. Authority for such appeal was found in subdivision 2 of section 963 of the Code of Civil Procedure. At the same time, this right of appeal from an order granting a new trial was recognized to be an exception to the general rule, frequently expressed, that the appellate jurisdiction in probate matters extended only to such orders and judgments as were specified in the third subdivision of section 963 of the Code of Civil Procedure. (*Estate of Allen*, 175 Cal. 356, 357 [165 Pac. 1011].) This case, after stating the general rule, said: "This rule is subject to the limitation that an appeal will lie from an order granting or denying a motion for a new trial, in those proceedings in probate in which such motion is proper."

It is, however, argued, and it must be conceded with some degree of plausibility, that since the enactment of the Probate Code as a separate compilation in 1931, such order is not appealable by reason of the fact that it is not designated in section 1240 of the Probate Code as an appealable order. It is urged that section 1240 of the Probate Code, which is the sole section under article IV, division 3, chapter 22, of the Probate Code, which article IV is headed, "Appeals," is a compilation of appealable orders in probate matters, and that any order theretofore appealable not contained in said section must now be deemed to be a nonappealable order. *Estate of Patterson*, 220 Cal. 370 [31 Pac. (2d) 197], decided March 27, 1934, subsequent to the adoption of the Probate Code, is relied upon as holding that only the orders specifically designated by said section 1240 of the Probate Code are appealable orders. This case, however, is not, in fact, authority for this contention by reason of the fact that the order therein involved was an order of the type

that had always been held to be nonappealable prior to the adoption of the Probate Code. It was an order nonsuiting the appellants in a will contest before probate, and the cases relied upon in that case in support of the conclusion that such order was nonappealable were all cases, decided prior to the adoption of the Probate Code, holding that such orders, not being designated by subdivision 3 of section 963 of the Code of Civil Procedure were nonappealable. In other words, the case of *Estate of Patterson, supra,* merely reaffirmed the general rule theretofore existing that probate orders not designated in subdivision 3 of section 963 of the Code of Civil Procedure, were not appealable, which rule was always subject to the limitation that an appeal would lie from an order granting a new trial in those proceedings in probate in which a motion for a new trial was proper. Section 1240 of the Probate Code is a substitute for subdivision 3 of section 963 of the Code of Civil Procedure, and it is apparent that the language used in *Estate of Patterson, supra,* with reference to appealable orders was intended to be limited to orders formerly authorized by subdivision 3 of section 963 of the Code of Civil Procedure, and has no applicability to an appeal theretofore authorized by subdivision 2 of said section 963 of the Code of Civil Procedure.

That *Estate of Patterson, supra,* did not intend to state a general rule that all appealable orders in probate must be designated in section 1240 of the Probate Code is clearly indicated by the fact that the brief of respondent in that case, who was asserting the nonappealability of the order therein involved, contains the following statement: ''The court should adhere to its oft-repeated rule that the only appealable orders or judgments in probate matters are those formerly found in subdivision 3 of C. C. P. 963; and now found in section 1240 of the Probate Code, *an order granting a new trial being perhaps the sole exception.*'' (Italics ours.)

The problem then resolves itself into the question of whether the right to appeal from an order granting a new trial in probate matters, authorized by subdivision 2 of section 963 of the Code of Civil Procedure, which provides for appeals generally, continues to exist under the authority of said subdivision of said section, or whether by reason of the fact that such appeal was not expressly included in the

Probate Code when adopted in 1931, this right of appeal has been eliminated by implication.

There is no information available with reference to the intention of the code commissioners, under whose direction the Probate Code was compiled, to preserve or to take away this right of appeal. Neither the reports of the code commission, nor any code section, nor any annotation to any code section, contains any reference to a repeal of subdivision 2 of section 963 as applied to orders in probate. Section 1700 of the Probate Code contains a schedule of repeals of certain code sections of the Code of Civil Procedure and the Civil Code, necessitated by the adoption of a separate Probate Code, but said section contains no reference to this subdivision 2 of section 963 of the Code of Civil Procedure. In the 1930 report of the California Code Commission, which accompanied the submission of the proposed Probate Code to the legislature and the Governor, the code commission itself expressly repudiated any power to materially change the existing law, saying: "It is not within the province of the Code Commission to embody in its report any substantial changes in the existing law." And in the 1935 report of the California Code Commission this policy is reiterated in the following words: "The commission in its work of revision and codification has adopted a definite policy not to make substantive changes, but to confine its work to compilation, consolidation, and clarification of the existing law."

In view of the declared policy of the code commission, and in the absence of any positive indication of an intention on the part of said commission to take away the right of appeal from an order granting a new trial in those proceedings in probate in which such motion is proper, we are satisfied that such right of appeal continues to exist, and that the order herein appealed from is an appealable order. This conclusion is supported to some extent by the case of *In re Grussing's Estate*, 15 Cal. App. (2d) 11 [59 Pac. (2d) 152], decided June 25, 1936, subsequent to the adoption of the Probate Code, in which the court, although dealing with an order denying a motion to set aside, on the ground of mistake, inadvertence, surprise and excusable neglect, an order setting apart to decedent's widow a probate homestead, which was a nonappealable order, nevertheless, in stating the general rule, was careful to state that, "This rule is subject to the

limitation that an appeal will lie from an order granting or denying a motion for new trial in those proceedings in probate in which such motion is proper." While, therefore, it would not be amiss for the legislature for the sake of clarity to include in section 1240 of the Probate Code as appealable the order herein appealed from, the fact that it is not so included does not deprive the appellant of his right to take an appeal to this court from such order.

It is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that the appellant has the burden of showing reversible error, and in the absence of such showing, the judgment or order appealed from will be affirmed. (*Hibernia Sav. etc. Soc.* v. *Ellis Estate Co.*, 132 Cal. App. 408, 412 [22 Pac. (2d) 806]; *Coleman* v. *Farwell*, 206 Cal. 740 [276 Pac. 335].) Appellant herein has failed to sustain this burden. There can be no question that two serious errors occurred at the trial of the will contest, the giving of an erroneous instruction with reference to the requirements for due execution, and a reaffirmance of the same error in one of the special interrogatories submitted to the jury. These errors were particularly serious in view of the fact that the sole ground relied upon for a revocation of the will was the lack of due execution. The following instruction was given: "The court instructs the jury that, if you find from the evidence that the witness, George Potter, did not subscribe to the will as a witness in the presence of the decedent and at her request, but signed as a witness to said will at the request of someone else and not in the presence of the decedent, *and not in the presence of the other witness*, then it is your duty to bring in a verdict in favor of the plaintiff." (Italics ours.) Plaintiff's special requested interrogatory No. 1 as given to the jury read: "Did George Potter sign the will in the presence of Maria Armstrong, the decedent, *and in the presence of the other witness?*" (Italics ours.) Thus the jury were twice informed that it was requisite that the witnesses sign in the presence of each other in order that a will be a properly executed will. This is not an essential requirement to the due execution of a witnessed will. (*Estate of Dow*, 181 Cal. 106 [183 Pac. 794]; *Estate of Lawrence*, 196 Cal. 321 [237 Pac. 738]; sec. 50 of the Probate Code, a reenactment of sections 1276 and 1278 of

the Civil Code.) If the jury believed, as it was required to believe upon such instruction, that the presence of both witnesses at the same time when the will was signed by them as witnesses was an essential requirement, then the general verdict of the jury in favor of the contestant may have been based upon this erroneous factor. Obviously, if such be the case, it was not only within the discretion of the trial judge, but it was his duty to grant a new trial. Even if it be conceded that the evidence of the contestant was directed largely to proving that the will was not signed by the witness George Potter in the presence of the testatrix and at her request, nevertheless, in view of the fact that the sole ground of contest was the lack of due execution, an instruction, which set forth as a requisite of due execution, a nonessential requirement not demanded by the code section governing the execution of witnessed wills, cannot be lightly disregarded as not prejudicial to the proponents of the will. ■ The general verdict merely found for the contestant, and from such general verdict it cannot be determined whether or not the jury in returning such verdict was influenced by such erroneous instruction.

It is urged, however, that such errors were not in fact prejudicial, and that this court, therefore, under section 4½, article VI, of the Constitution, may reverse the order of the trial court granting a new trial. This argument is based upon the theory that the special interrogatories were answered by the jury in the negative, and that, although an error occurred in the first interrogatory, the finding as to the second interrogatory, that the will was not signed by the witness in the presence of and at the request of the testatrix, rendered immaterial the question of whether or not the witnesses signed in the presence of each other. It is, however, to be noted in this connection that the special verdicts were not included in the record and that the judgment setting aside the probate of the will recites only the so-called general verdict, and it is impossible for us to determine from the record what were the answers of the jury to these interrogatories. In the absence of authoritative proof as to what the special verdicts were, we cannot, basing our reasoning upon such special verdicts, arrive at a conclusion that no prejudice occurred by reason of admitted errors of law occurring at the trial. Certainly, we cannot affirmatively hold

that the trial court abused its discretion in granting a new trial upon such errors.

The order is affirmed.

Langdon, J., Waste, C. J., Seawell, J., Shenk, J., and Edmonds, J., concurred.