[No. 36698.   Department Two.   September 19, 1963.]

EDWARD J. MOE *et al., Respondents,* v. ROBERT S. CAGLE *et al., Appellants.*\*

*MacDonald, Hoague & Bayless,* by *Kenneth A. MacDonald,* for appellants.

*Stanley N. Kasperson,* for respondents.

DAWSON, J.[†]—Plaintiffs Edward J. Moe and wife, owners of a servient estate, sought to establish in this action that the posture of a garage located on a portion of the servient property constitutes a permissive, revocable use. Plaintiffs prevailed, and defendants Robert S. Cagle and wife, owners of the dominant estate, appeal.

The estates lie between Forest Avenue (also called 80th Avenue S.E.) and Lake Washington on Mercer Island. The elevation drops sharply from the avenue to the lake, and, in topography, forms an upper and lower level. Lying

\*Reported in 385 P. (2d) 56.

[†]Judge Dawson is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

between these levels is a road and the site on which the garage is located. Plaintiffs own the upper level and on this portion their home is situated. They also own a 32-foot projection extending to the lake shore, on which has been erected a boat house and patio, and which is utilized for picnics and other recreational uses. Defendants Robert S. Cagle and wife own the balance of the property on the lower level, which, with the exception of Lake Washington as a passage, is landlocked.

The trial court in its construction of a written grant of right-of-way executed July 10, 1952, ruled dogmatically that the document was not ambiguous and could be construed without consideration of the negotiations and other circumstances surrounding the grant.

From the record the following facts are gleaned: A prior servitude, referred to as a foot path, but wide enough to support a modern right-of-way, had been formally granted. It was extinguished by quitclaim deed delivered when the written easement was executed. Further, for an undisclosed number of years, a roadway had been used by defendants over and across the location of the present right-of-way, and the defendants had built, used, and maintained the garage in its present location. The garage is a substantial improvement, 20 by 24 feet in size, of permanent construction, with a concrete foundation. Whether these uses were permissive or adverse, and, if permissive, whether they constituted a revocable or irrevocable license, or an easement, of course, does not appear. In view of the fact that its owners were planning to convey the servient estate, we surmise it was the mutual desire to reduce the existing intentions, rights, and burdens to writing.

The easement of July 10, 1952, was "made by and between MAURICE MAHER and JANET MAHER, his wife, hereinafter referred to as the grantors, and ROBERT S. CAGLE and MARGERY CAGLE, his wife, hereinafter referred to as the grantee." All parties executed and acknowledged it. The grantors were predecessors in interest of the servient estate. The formal grant is in the following terms:

"In consideration of the covenants and agreements herein contained grantors hereby grant and convey to the grantees, their successors and assigns, an easement for a right of way for a private road over and across the following described land: [legal description follows.]"

Following the grant are four covenants, one of which provides:

"Grantees covenant to keep, and maintain their garage in a good and serviceable and neat condition; said garage being located on a portion of said herein granted easement."

■ The trial court considered these four sequent covenants as being in the nature of exceptions which limit and restrict, but do not furnish shades of meaning to or expose tenuous interests. We disagree with this basis of construction of the easement, for the grant is "subject to" the covenants and, thus, the entire instrument must be construed from its four corners. In other words, the grant is subordinate and obedient to the terms of the covenants. On the one hand, the grant may be restricted thereby, but, on the other hand, it may, by the same token, be broadened. 3 Powell on Real Property § 407, p. 402, states that, although form is less significant today than it once was, nevertheless, a careful conveyancer should grant an easement in terms and ". . . then specify carefully the acts on the servient land which are thereby privileged; . . ." Obviously, this was the purpose of the covenants.

Plaintiffs contend that a strict construction of the expression of the parties must be given. We disagree. The fact that defendants paid all surveying and legal costs has no particular significance, because the trial court refused to permit any testimony as to the surrounding circumstances. There is nothing to support an inference that defendants dictated terms. In absence of proof to the contrary, it seems obvious that the assumption of the entire cost was merely a part of the consideration given to grantors.

The legal description of the right-of-way in the express grant included the entire route of the private road. (This road, it is noted, is of benefit to both estates.) At its termination, an enlarged area in the shape of a quadrilateral at right

angles to the roadway is then legally described and included in the grant. On this enlarged area, the garage is placed. The trial court concluded that this area may be used permanently by defendants as a parking area, we presume on the theory that the reasonable use of a roadway includes the right to park thereon. It is obvious, however, that the garage area was not intended to be a part of the road, for it would serve no useful purpose as a road. Plaintiffs maintain that by inclusion in the grant, it was intended for use as a turn-around. Neither its shape, nor the circumstances, supports this inference. In view of the circumstances and the proper aids to construction,[1] we think the more reasonable inference is that inclusion in the grant of the garage site was an expressed intention for that use and none other.

In 3 Powell on Real Property § 429, p. 519, we read:

". . . The marked tendency of the law has been to minimize the consequences of defects in the formalities of a transaction and thus to increase the frequency of easements and correspondingly to decrease the frequency of licenses so created."

In view of this modern tendency, perhaps the following considerations should be persuasive: (1) The inclusion of the garage site in the legal description as a part of the formal grant was a needless and unnecessary act, if only a transitory right was intended, (2) the promise to keep the garage in good, serviceable, and neat condition is a

___

[1] In Restatement, Property § 483, it is stated:

"In ascertaining the extent of an easement created by conveyance, the following are important factors

    (a) the circumstances under which the conveyance was made,

    (b) the fact that the conveyance was or was not gratuitous,

    (c) the use made of the servient tenement before the conveyance,

    (d) the use made of the servient tenement after the conveyance."

3 Powell on Real Property, § 415, p. 459, states:

". . . With respect to the scope of easements, five types of circumstances have frequent importance, namely, (a) whether the easement was created by grant or by reservation; (b) whether the conveyance was, or was not, gratuitous; (c) the use of the servient tenement prior to the conveyance; (d) the parties' practical construction of the easement's scope; and (e) the purpose for which the easement was acquired."

consideration which should support, in return, a promise of more substance than revocable license, and (3) the prior use of the servient tenement, including the construction of a substantial garage, the topography of the area which dictates the necessity of the permanent use of a servient property, and the investments in improvements to the dominant estate, are more consistent with permanency than with a temporary use.

However, there are other answers, less reasonable to be sure, yet possible ones. There are proper avenues open which will lead to clarity, the true intention of the parties, and which should have been explored by the trial court. The rules are so basic, citation of authorities is unnecessary.

■ The failure to make an offer of proof is of little consequence, for the trial court said, in rejecting parol evidence:

". . . At the end of the plaintiffs' case . . . should the court determine that the instrument is not clear, that it's ambiguous in any way, then the court will give you an opportunity as part of your case to seek to clarify it by proper evidence."

As we have seen, the court ruled that the easement was unambiguous, so no occasion arose to either present evidence or make an offer.

In 1 Wigmore on Evidence (3d ed.) §17, p. 318, it is stated:

"But a specific offer of evidence is not needed where an *entire class of evidence* has been in advance formally declared inadmissible by the trial Court during preliminary argument or colloquy; for the Court's ruling relates forward to all possible offers of such evidence and renders them needless. . . ."

See, also, 88 C.J.S., Trial § 74.

Case law on this issue includes the following authorities: *Estate of Kearns,* 36 Cal. (2d) 531, 225 P. (2d) 218; *Ponce v. Marr,* 47 Cal. (2d) 159, 301 P. (2d) 837; *Westman v. Clifton's Brookdale, Inc.,* 89 Cal. App. (2d) 307, 200 P. (2d) 814; *Carroll v. Beavers,* 126 Cal. App. (2d) 828, 273 P. (2d) 56; *Swanson v. Thurber,* 132 Cal. App. (2d) 171, 281 P.

(2d) 642; *Chambers v. Silver*, 103 Cal. App. (2d) 633, 230 P. (2d) 146; *Sandon v. John Hancock Mut. Life Ins. Co.*, 245 Iowa 390, 62 N.W. (2d) 247; *Falejczyk v. Meo*, 31 Ill. App. (2d) 372, 176 N.E. (2d) 10; *Hawkey v. Williams*, 72 Wyo. 20, 261 P. (2d) 48.

These cases hinged upon one or the other of the following grounds: the relevancy of the class of evidence excluded was apparent; an offer would have been a useless or unavailing gesture; the court's ruling and unwillingness to hear any evidence of a class rendered an offer of proof unnecessary. It matters not which ground we prefer, for all lead to the conclusion that, under the attendant circumstances, an offer of proof would have been a useless ceremony, and its relevancy as a class must be conceded.

The judgment is reversed, and the cause remanded for a new trial, limited to the issue involving the garage site.

. OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.